FILED
CLERK, U.S. DISTRICT COURT

JUN - 9 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

GREGORIO MURGUIA,              )   NO. CV 06-5087-ODW(E)
                               )
          Petitioner,          )
                               )   ORDER ADOPTING FINDINGS,
     v.                        )
                               )   CONCLUSIONS AND RECOMMENDATIONS
DERRICK L. OLLISON,            )
                               )   OF UNITED STATES MAGISTRATE JUDGE
          Respondent.          )
_____)

     Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition
and the attached Report and Recommendation of United States Magistrate
Judge.  The Court approves and adopts the Magistrate Judge's Report
and Recommendation.

     IT IS ORDERED that Judgment be entered denying and dismissing the
Petition with prejudice.

///
///
///
///

1        IT IS FURTHER ORDERED that the Clerk serve copies of this Order,

2    the Magistrate Judge's Report and Recommendation and the Judgment

3    herein by United States mail on Petitioner and counsel for Respondent.

4

5        LET JUDGMENT BE ENTERED ACCORDINGLY.

6

7    DATED:   June  6            , 2008.

8

9    _____

10        OTIS D. WRIGHT II
         UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   GREGORIO MURGUIA,                    ) NO. CV 06-5087-ODW(E)
                                          )
12                    Petitioner,         )
                                          )
13        v.                              ) REPORT AND RECOMMENDATION OF
                                          )
14   DERRICK L. OLLISON,                  ) UNITED STATES MAGISTRATE JUDGE
                                          )
15                    Respondent.         )
                                          )
16   _____ )

17

18        This Report and Recommendation is submitted to the Honorable

19   Otis D. Wright, II, United States District Judge, pursuant to

20   28 U.S.C. section 636 and General Order 05-07 of the United States

21   District Court for the Central District of California.

22

23                         **PROCEEDINGS**

24

25        Petitioner filed a "Petition for Writ of Habeas Corpus By a

26   Person in State Custody" on August 14, 2006 (the "Petition").   On

27   September 8, 2006, Respondent filed an Answer which did not address

28   the merits, but rather argued that the Petition should be dismissed

1  for failure to exhaust, given Petitioner's then-pending habeas

2  petition before the California Supreme Court.  When Petitioner failed

3  to file a timely reply to Respondent's Answer, the Magistrate Judge

4  filed a Report and Recommendation recommending that the Petition be

5  dismissed due to Petitioner's failure to prosecute.  See November 13,

6  2006 Report and Recommendation of United States Magistrate Judge.

7

8      On November 29, 2006, Petitioner filed a "Motion: For Stay and

9  Abeyance" (the "Motion") requesting that the Court stay the

10  proceedings while Petitioner exhausts his claims.  The Magistrate

11  Judge then withdrew the Report and Recommendation, see November 29,

12  2006 Minute Order, and the Court subsequently denied the Motion.  See

13  January 24, 2007 Order.

14

15      On March 12, 2007, Respondent filed a Notice of Lodging

16  indicating that the California Supreme Court denied Petitioner's

17  habeas petition on January 24, 2007.  See Notice of Lodging, fn. 1,

18  pp. 1-2; Respondent's Lodgment 5.  The Court then issued an order

19  requiring Respondent to file a Supplemental Answer addressing the

20  merits of the Petition.  See April 23, 2007 Minute Order.  Respondent

21  filed a Supplemental Answer on September 5, 2007.  Petitioner filed a

22  Reply on November 13, 2007.

23

24                              **BACKGROUND**

25

26      A jury found Petitioner guilty of one count of second degree

27  robbery in violation of California Penal Code section 211 (Reporter's

28  Transcript ["R.T."] 386-87; Clerk's Transcript ["C.T."] 63).  The jury

1  found true the allegation that, in the commission of the offense,

2  Petitioner personally used a firearm within the meaning of California

3  Penal Code section 12022.53(b) (R.T. 386; C.T. 63).  The court

4  sentenced Petitioner to a prison term of thirteen years (R.T. 390;

5  C.T. 74-77).

6

7      Appellate counsel for Petitioner filed a brief pursuant to People

8  v. Wende, 25 Cal. 3d 436, 158 Cal. Rptr. 839, 600 P.2d 1071 (1979),

9  raising no issues but requesting that the California Court of Appeal

10  independently review the record.  See Exhibit B to Answer.  Petitioner

11  filed a handwritten supplemental brief asserting certain of the issues

12  herein.  See Exhibit A to Supplemental Answer.  On February 24, 2005,

13  the Court of Appeal dismissed the appeal on the grounds that

14  Petitioner's counsel had complied with her duties under People v.

15  Wende, and finding that no arguable issues existed.  See Exhibit C to

16  Answer.  The California Supreme Court denied Petitioner's petition for

17  review without comment on May 11, 2005.  See Exhibit D to Answer;

18  Respondent's Lodgment 3.

19

20      Petitioner then filed a habeas corpus petition with the

21  California Supreme Court which that court denied, citing In re Swain,

22  34 Cal. 2d 300, 304, 209 P. 2d 793 (1949), cert. denied, 338 U.S. 944

23  (1950) ("Swain") and People v. Duvall, 9 Cal. 4th 464, 474, 37 Cal.

24  Rptr. 2d 259, 886 P.2d 1252 (1995) ("Duvall").  See Respondent's

25  Lodgments 4 and 5.

26  ///

27  ///

28  ///

3

**PETITIONER'S CONTENTIONS**

Petitioner challenges the constitutionality of his conviction, arguing:

    1.   Petitioner's counsel assertedly rendered ineffective assistance by allegedly:

        a.   Failing to investigate the whereabouts of the bicycle that Petitioner was riding when he was arrested;

        b.   Failing to "mak[e] critical objections at a critical stage in trial" (Petition, Ground 1).

    2.   Petitioner allegedly was denied his due process right to a fair trial by:

        a.   the loss of the bicycle which Petitioner alleges deprived him of the right effectively to cross-examine witnesses (Petition, Grounds 1 and 3); and

        b.   the admission of identification evidence allegedly tainted by assertedly suggestive identification procedures (Petition, Grounds 2 and 3).

**SUMMARY OF TRIAL EVIDENCE**

At trial, the prosecution introduced evidence to show the

4

1 | following:

2

3 |     In the early morning hours of June 8, 2003, Pedro Duran was

4 | robbed at gunpoint as he returned to his Huntington Park apartment

5 | (R.T. 302-03, 305, 314). Duran had just parked his truck in his

6 | garage when he noticed someone standing next to a nearby trash can

7 | with a gray, white and chrome bicycle (R.T. 302-03, 316). Duran had

8 | never seen the man before (R.T. 315).

9

10 |     Duran testified that after he got out of his truck he watched as

11 | the man walked toward him to a distance of about three or four meters

12 | away (R.T. 304). Duran was able to see the man's face (Id.). Duran

13 | said the man asked Duran if he had a bicycle pump because the man's

14 | bike tire had gone flat (Id.). When Duran said he did not, the man

15 | walked in front of Duran and pulled out a gun from his waistband and

16 | put it to Duran's forehead (R.T. 305). The man demanded all the money

17 | that Duran had with him (Id.).

18

19 |     The man then directed Duran to a darker place in the garage and

20 | told him to lie on the ground (R.T. 306, 317-18). Duran complied

21 | (Id.). The man took Duran's wallet and pulled a chain off Duran's

22 | neck (R.T. 307). The man told Duran not to look up and told Duran to

23 | count to 18 (Id.). The man left on his bicycle (R.T. 307-08). As the

24 | man was leaving, Duran turned to look, but the man told Duran not to

25 | look or Duran would be shot (Id.).

26

27 |     Duran called the police and described his assailant as a man

28 | between the ages of 20 and 25, who was approximately two inches taller

1  than Duran and weighed between 180 and 190 pounds (R.T. 308-09, 319).

2  Duran weighed 176 or 177 pounds at the time of the robbery (R.T. 319).

3  The assailant spoke to Duran both in English and in Spanish (R.T.

4  309).[1]

5

6      At trial, Duran identified Petitioner as the man who robbed him.

7  See R.T. 303 (Duran indicating: "It looks like him.").   The

8  prosecution asked Duran and Petitioner to stand and then asked whether

9  Duran was confident Petitioner was the man who robbed him (R.T. 310).

10 Duran said "yes" (Id.).   Duran had earlier identified Petitioner from

11 a 6-pack photographic line-up on July 14, 2003, after admonishment by

12 police (R.T. 310-12, 319, 332-33, 335).[2]   Duran remarked on the back

13 of the line-up: "I recognize the individual because before he attacked

14 me, he had asked me for a bicycle pump" (R.T. 313).

15

16     Huntington Park Police Officer Conrad Chacon testified that he

17 stopped Petitioner on June 20, 2003 for riding a chrome bicycle on the

18 wrong side of the street (R.T. 21-22, 25).   Upon the stop, Officer

19 Chacon searched Petitioner and found a fully-loaded, semi-automatic

20 .32-caliber handgun in Petitioner's waistband (R.T. 23-24).   The gun

21 was chrome with a black handle, "very rusted" and "very old" (R.T.

22 24).   At trial, Duran identified a photograph of the gun police seized

23 _____

24     [1]   Petitioner's father testified that Petitioner is 5'8"
   tall, weighed 180 pounds, and speaks both English and Spanish

25 (R.T. 328-29).

26     [2]   Police advised Duran in Spanish: (1) to look at the
   series of photographs to determine whether he could identify

27 anyone as being involved in the robbery; (2) that it was not
   known if the person who robbed him was in the photographs; and

28 (3) not to feel obligated to identify anyone (R.T. 311-12).

1  from Petitioner on June 20 as the gun that Petitioner pointed at

2  Duran's forehead (R.T. 305-06).[3]

3

4      At the time of the robbery, Petitioner lived in the 6800 block of

5  Marconi Street in Huntington Park, which is approximately four or five

6  blocks away from where the robbery took place (R.T. 23-24).  None of

7  Duran's items were recovered from Petitioner (R.T. 26, 334).

8

9      Petitioner did not testify or present any witnesses in his

10  defense.  Rather, Petitioner's counsel attempted to attack the

11  strength of the state's case (R.T. 380-81).  Petitioner' counsel

12  extensively cross-examined Duran concerning: (1) Duran's observation

13  of the robber at the time of the robbery; (2) Duran's description of

14  the robber shortly after the robbery; (3) Duran's later identification

15  of Petitioner as the robber and of Petitioner's gun as the gun Duran's

16  robber used; and (4) what the police said to Duran at the time of

17  Duran's identifications (R.T. 318-24).  Counsel argued that the

18  evidence against Petitioner was weak, given Duran's limited ability to

19  view the robber, the purported inaccuracy of his description of the

20  robber on the night of the robbery, and the time that elapsed before

21  the identifications (R.T. 372-78).  Counsel suggested that the police

22  tainted Duran's identifications by telling Duran that they had

23

24

_____

25      [3]    Prior to trial, on November 4, 2003, police showed

26  Duran a photograph of the gun police seized from Petitioner and
    Duran then identified the gun in the photograph as the gun

27  Petitioner used to rob him (R.T. 306, 333, 336).  Before viewing
    the photograph, Duran had described the gun to police as "old-

28  looking" (R.T. 326).

1  arrested Petitioner with a bicycle and a gun (R.T. 372-73).[4]

## STANDARD OF REVIEW

A federal court may not grant an application for writ of habeas corpus on behalf of a person in state custody with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

---

[4]     Counsel closed with:

> You can reasonably assume that when [the police] went to [Duran], they told [Duran], hey listen.  We caught this guy four blocks from where you live, and he lives down the block.  Hey, guess what.  He was on a bike and he had a gun.  We think he's the guy.  What do you think. [sic] And they show [Duran] a photograph, and, sure enough, they put his photograph right dead-bang center number two position that when you look at the sixpack, you can't help but look at that photograph. ¶ The officer said it was by luck.  I don't know.  But I think it's too much of a coincidence that my client's picture ends up right in the center position, the first photograph the victim is going to look at.

> * * *

> Fastforward four and-a-half months later, the officer decides to put a picture of the gun and go and show it to the victim.  Obviously, again, sometime, whether it was this meeting or the meeting before Mr. Duran was told you found this gentleman riding a bicycle matching a description of the person you described with a gun on him on a bicycle, here's the gun we found on him.  Does it ring a bell. [sic] Yeah. Sure. That's the gun.

(R.T. 373-74).  The trial court instructed the jury with CALJIC 2.92, the standard instruction for evaluating the reliability of eyewitness identifications (C.T. 47-48).

1   United States"; or (2) "resulted in a decision that was based on an

2   unreasonable determination of the facts in light of the evidence

3   presented in the State court proceeding." 28 U.S.C. § 2254(d) (as

4   amended); Woodford v. Visciotti, 537 U.S. 19, 24-26 (2002); Early v.

5   Packer, 537 U.S. 3, 8 (2002); Williams v. Taylor, 529 U.S. 362, 405-09

6   (2000).

7

8        "Clearly established Federal law" refers to the governing legal

9   principle or principles set forth by the Supreme Court at the time the

10   state court renders its decision. Lockyer v. Andrade, 538 U.S. 63

11   (2003). A state court's decision is "contrary to" clearly established

12   Federal law if: (1) it applies a rule that contradicts governing

13   Supreme Court law; or (2) it "confronts a set of facts . . .

14   materially indistinguishable" from a decision of the Supreme Court but

15   reaches a different result. See Early v. Packer, 537 U.S. at 8

16   (citation omitted) (quoting Williams v. Taylor, 529 U.S. at 405-06).

17

18        Under the "unreasonable application prong" of section 2254(d)(1),

19   a federal court may grant habeas relief "based on the application of a

20   governing legal principle to a set of facts different from those of

21   the case in which the principle was announced." Lockyer v. Andrade,

22   538 U.S. at 76 (citation omitted); see also Woodford v. Visciotti, 537

23   U.S. at 24-26 (state court decision "involves an unreasonable

24   application" of clearly established federal law if it identifies the

25   correct governing Supreme Court law but unreasonably applies the law

26   to the facts). A state court's decision "involves an unreasonable

27   application of [Supreme Court] precedent if the state court either

28   unreasonably extends a legal principle from [Supreme Court] precedent

1   to a new context where it should not apply or unreasonably refuses to

2   extend that principle to a new context where it should apply."

3   Williams v. Taylor, 529 U.S. at 407 (citation omitted).

4

5        "In order for a federal court to find a state court's application

6   of [Supreme Court] precedent 'unreasonable,' the state court's

7   decision must have been more than incorrect or erroneous." Wiggins v.

8   Smith, 539 U.S. 510, 520-21 (2003) (citation omitted).  "The state

9   court's application must have been 'objectively unreasonable.'" Id.

10  (citation omitted); see also Clark v. Murphy, 331 F.3d 1062, 1068 (9th

11  Cir.), cert. denied, 540 U.S. 968 (2003).

12

13       In applying these standards, this Court looks to the last

14  reasoned state court decision.  See Davis v. Grigas, 443 F.3d 1155,

15  1158 (9th Cir. 2006) (citation and quotations omitted).  To the extent

16  no such reasoned opinion exists, as where a state court rejected a

17  claim in an unreasoned order, this Court must conduct an independent

18  review to determine whether the decisions were contrary to, or

19  involved an unreasonable application of, "clearly established" Supreme

20  Court precedent.  See Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir.

21  2000).  If a state court declined to decide a federal constitutional

22  claim on the merits, this Court must consider that claim under a de

23  novo standard of review rather than the more deferential "independent

24  review" of unexplained decisions on the merits authorized by Delgado

25  v. Lewis.  See Lewis v. Mayle, 391 F.3d 989, 996 (9th Cir. 2004)

26  (standard of de novo review applicable to claim state court did not

27  reach on the merits).

28  ///

10

1                              **DISCUSSION**

2

3        For the reasons discussed below, the Petition should be denied

4   and dismissed with prejudice.[5]

5

6   I.   **Petitioner Is Not Entitled to Habeas Relief on His Ineffective**

7        **Assistance of Trial Counsel Claim.**

8

9        A.    **Governing Legal Standards**

10

11       To establish ineffective assistance of counsel, Petitioner must

12  prove: (1) counsel's representation fell below an objective standard

13  of reasonableness; and (2) there is a reasonable probability that, but

14  for counsel's errors, the result of the proceeding would have been

15  different.  Strickland v. Washington, 466 U.S. 668, 688, 694, 697

16  (1984) ("Strickland").  A reasonable probability of a different result

17  "is a probability sufficient to undermine confidence in the outcome."

18  Id. at 694.  The court may reject the claim upon finding either that

19  counsel's performance was reasonable or the claimed error was not

20  prejudicial.  Id. at 697; Rios v. Rocha, 299 F.3d 796, 805 (9th Cir.

21  2002) ("Failure to satisfy either prong of the Strickland test

22  obviates the need to consider the other.") (citation omitted).  For

23  purposes of habeas review under 28 U.S.C. section 2254(d), Strickland

24  sets forth clearly established Federal law as determined by the United

25  States Supreme Court.  See Williams v. Taylor, 529 U.S. at 391

26  _____

27        [5]    The Court has read, considered and rejected on the
    merits all of Petitioner's contentions.  The Court discusses
28  Petitioner's principal contentions herein.

1   (citation and quotations omitted).

2

3        Review of counsel's performance is "highly deferential" and there

4   is a "strong presumption" that counsel rendered adequate assistance

5   and exercised reasonable professional judgment.  Williams v. Woodford,

6   384 F.3d 567, 610 (9th Cir. 2004), cert. denied, 546 U.S. 934 (2005)

7   (quoting Strickland, 466 U.S. at 689).  The court must judge the

8   reasonableness of counsel's conduct "on the facts of the particular

9   case, viewed as of the time of counsel's conduct."  Strickland, 466

10  U.S. at 690.  The court may "neither second-guess counsel's decisions,

11  nor apply the fabled twenty-twenty vision of hindsight."  Karis v.

12  Calderon, 283 F.3d 1117, 1130 (9th Cir. 2002), cert. denied, 539 U.S.

13  958 (2003) (citation and quotations omitted); see Yarborough v.

14  Gentry, 540 U.S. 1, 8 (2003) ("The Sixth Amendment guarantees

15  reasonable competence, not perfect advocacy judged with the benefit of

16  hindsight.") (citations omitted).  The test is "only whether some

17  reasonable lawyer . . . could have acted, in the circumstances, as

18  defense counsel acted."  Coleman v. Calderon, 150 F.3d 1105, 1113 (9th

19  Cir.) (citations and quotations omitted), rev'd on other grounds, 525

20  U.S. 141 (1998); see also Babbitt v. Calderon, 151 F.3d 1170, 1173-74

21  (9th Cir. 1998), cert. denied, 525 U.S. 1159 (1999) (relevant inquiry

22  under Strickland is not what defense counsel could have pursued, but

23  rather whether the choices made by defense counsel were reasonable)

24  (citation and quotations omitted); Morris v. California, 966 F.2d 448,

25  456-57 (9th Cir.), cert. denied, 506 U.S. 831 (1992) (if the court can

26  conceive of a reasonable tactical reason for counsel's action or

27  inaction, the court need not determine the actual explanation).

28  Petitioner bears the burden to "overcome the presumption that, under

1   the circumstances, the challenged action might be considered sound

2   trial strategy." <u>Strickland</u>, 466 U.S. at 689 (citation and quotations

3   omitted).

4

5   **B.   <u>Petitioner Has Not Shown His Counsel Was Ineffective.</u>**

6

7        Petitioner alleges his trial counsel was ineffective for failing

8   to: (1) "investigate the whereabouts" of the bicycle Petitioner was

9   riding when he was arrested; and (2) "[make] critical objections at a

10  critical stage in trial" (Petition, Ground 1).   The California Supreme

11  Court rejected this claim without reaching the merits.[6]   Therefore,

12  _____

13        [6]    Respondent admits that the California Supreme Court's
    summary denial citing <u>Swain</u> and <u>Duvall</u> dismissed Petitioner's
14  state habeas petition for failure to allege facts with sufficient
    particularity, and therefore this claim should be reviewed <u>de</u>
15  <u>novo</u>.   <u>See</u> Supplemental Answer, p. 6 (citing <u>Pirtle v. Morgan</u>,
    313 F.3d 1160, 1167 (9th Cir. 2002), <u>cert. denied</u>, 539 U.S. 916
16  (2003) (holding that <u>de novo</u> review is appropriate when state
    court did not reach merits of claim properly preserved by
17  petitioner and thereafter presented to federal habeas court));
    <u>see also</u> <u>Chaker v. Crogan</u>, 428 F.3d 1215, 1220-21 (9th Cir.
18  2005), <u>cert. denied</u>, 126 S. Ct. 2023, 164 L. Ed. 2d 780 (2006)
    (noting that for procedurally defaulted claim where there is no
19  state court decision on the merits, there is no decision to
    review under AEDPA and the standard of review is <u>de novo</u>); <u>Medley</u>
20  <u>v. Runnels</u>, 506 F.3d 857, 869-70 (9th Cir. 2007) <u>(en banc)</u>
    (Ikuta, J., dissenting) (discussing <u>Chaker</u>).   Respondent does not
21  assert that Petitioner's ineffective assistance claim is
    unexhausted or procedurally defaulted.   <u>See</u> Supplemental Answer,
22  p. 2.

23
    To resolve this claim, the Court need not decide whether the
24  California Supreme Court's apparent failure to reach the merits
    on state procedural grounds procedurally defaulted this claim.
25  <u>See</u> <u>Lambrix v. Singletary</u>, 520 U.S. 518, 523-25 (1997)
    (explaining that when habeas petition presents both question of
26  procedural default and a merits issue, the procedural bar
    question should ordinarily be considered first; however, where
27                                                    (continued...)

28

1  the Court reviews this claim de novo.   See Respondent's Lodgments 4

2  and 5; Lewis v. Mayle, supra, 391 F.3d at 996.   For the reasons

3  discussed below, neither of Petitioner's contentions merits relief.

4

5        1.    **Failure to Investigate the Bicycle**

6

7        Duran described his assailant as having a gray, white and chrome

8  bicycle with curved handles (R.T. 303).   When the police arrested

9  Petitioner 12 days after the robbery, Petitioner reportedly was riding

10 _____

11        [6](...continued)
12 the procedural issue presents complicated issues of state law and
   the merits of the question are easily resolvable against the
13 petitioner, judicial economy warrants giving the merits question
   priority); Medley v. Runnels, supra, 506 F.3d at 870; Franklin v.
14 Johnson, 290 F.3d 1223, 1229, 1232-33 (9th Cir. 2002); see also
   Barrett v. Acevedo, 169 F.3d 1155, 1162 (8th Cir.), cert. denied,
15 528 U.S. 846 (1999) ("judicial economy sometimes dictates
   reaching the merits if the merits are easily resolvable against a
16 petitioner while the procedural bar issues are complicated").
   Moreover, the pleading defects underlying state court denials
17 citing Swain can be cured in a renewed state petition, suggesting
18 no procedural default.   Kim v. Villalobos, 799 F.2d 1317, 1320
   (9th Cir. 1986).
19
        Nor must the Court decide whether Petitioner has adequately
20 exhausted this claim.   Where the California Supreme Court denies
21 a habeas petition with citations to Duvall or Swain, the denial
   can signify a failure to exhaust available state remedies.   See
22 Kim v. Villalobos, supra, 799 F.2d at 1319. Respondent concedes
   in the Supplemental Answer that Petitioner has exhausted his
23 claims, and the Court finds that the facts as pleaded and
   presented to the California Supreme Court were pleaded with as
24 much particularity as practicable to allow the Court to reach his
25 claims.   See Respondent's Lodgment 4.   Finally, even if
   Respondent had asserted the claims were not exhausted, for the
26 reasons discussed herein, the Court may reach and deny the merits
   of Petitioner's claim because it is "perfectly clear"
27 Petitioner's ineffective assistance claim is not colorable.   See
   Cassett v. Stewart, 406 F.3d 614, 623-24 (9th Cir. 2005), cert.
28 denied, 546 U.S. 1172 (2006).

1   a chrome bicycle (R.T. 25).  Prior to the start of trial, the

2   prosecution informed the trial court it intended to introduce the

3   bicycle as evidence (R.T. 2).  However, the bicycle was never

4   introduced at trial.  Duran was never shown a photograph of the

5   bicycle or asked to identify Petitioner's bicycle as the one used by

6   the robber (R.T. 318, 337).

7

8      Petitioner asserts his counsel was ineffective for failing to

9   investigate the "whereabouts" of the bicycle.  Petitioner claims that

10  a police report from the day of the robbery reflected that Duran

11  reported the assailant's bicycle to be a "baige [sic]" beach cruiser,

12  and not a chrome bicycle like the one Petitioner was riding when he

13  was arrested.  See Reply, p. 1; Exhibit A to Supplemental Answer,

14  p. A-14.  No such report appears in the record.  Petitioner also

15  claims without any offer of proof that he asked his trial counsel to

16  bring in the bicycle during trial, but was told that the police had

17  discarded the bicycle.  See Exhibit A to Supplemental Answer, p. A-14.

18  Petitioner alleges that, had the bicycle been brought into the trial,

19  the outcome of the trial somehow would have been different.  Id. at

20  pp. A-14 - A-15.  Alternatively, Petitioner asserts counsel should

21  have moved to suppress evidence that Petitioner was arrested on a

22  bicycle, given the alleged unavailability of the bicycle at trial.

23  See Reply, p. 1.

24

25      While defense counsel has a "duty to make reasonable

26  investigations or to make a reasonable decision that makes particular

27  investigations unnecessary," Strickland, 466 U.S. at 691, Petitioner

28  has presented nothing to overcome the strong presumption that his

1   counsel made a reasonable decision that further investigation of the

2   bicycle was unnecessary for Petitioner's defense.  <u>Williams v.</u>

3   <u>Woodford</u>, 384 U.S. at 610.  The prosecution never argued that the

4   bicycle with Petitioner at the time of his arrest was the same bicycle

5   the perpetrator rode on the night of the robbery (R.T. 369-70).

6   Rather, the prosecution simply pointed to the uncontroverted fact that

7   Petitioner was "getting around on a bicycle" during June 2003 when the

8   robbery occurred (R.T. 369).[7]  Petitioner has failed to demonstrate

9   that counsel's decision not to challenge the missing bicycle was

10  outside the wide range of reasonable professional assistance.

11  <u>Strickland</u>, 466 U.S. at 691 ("In any ineffectiveness case, a

12  particular decision not to investigate must be directly assessed for

13  reasonableness in all the circumstances, applying a heavy measure of

14  deference to counsel's judgments.").

15

16      Assuming, <u>arguendo</u>, it was error for counsel not to investigate

17  the bicycle or move to suppress evidence concerning Petitioner's

18  arrest with a bicycle, Petitioner cannot demonstrate prejudice under

19  <u>Strickland</u>.  <u>See Strickland</u>, 466 U.S. at 687-90.  Petitioner's

20  unsupported allegations concerning any possible discrepancy between

21  the bicycle Petitioner was riding when he was arrested and the

22  perpetrator's bicycle do not undermine the Court's confidence in the

23  outcome at trial.  Even if Petitioner's counsel could have proven the

24  bicycles were not the same, or otherwise persuaded the trial court to

25  _____

26      [7]    Petitioner's father testified that Petitioner was not
    riding his own bicycle in June, but rather was riding one loaned
27  by Petitioner's friend (R.T. 329-30).  Petitioner's father
    confirmed that during June 2003 Petitioner was "getting around"
28  on a bicycle "sometimes" (R.T. 330).

1   exclude evidence that Petitioner was arrested with a bicycle, there is

2   no reasonable probability that the outcome of the trial would have

3   been any different.  As noted above, the case against Petitioner did

4   not depend in any degree on whether the bicycle present at the time of

5   arrest was the same bicycle present at the time of the robbery.

6   Rather, the case against Petitioner depended on whether the jury

7   believed Duran's identification of Petitioner and identification of

8   the gun found on Petitioner.

9

10      Because Petitioner has failed to demonstrate that counsel's

11  actions or omissions with respect to the bicycle were either

12  unreasonable or prejudicial, this claim fails.  See Strickland, 466

13  U.S. at 694.

14

15      2.   **Failure to Make "Critical" Objections**

16

17      Petitioner alleges that his trial counsel was ineffective for

18  failing to "make critical objections at a critical stage in trial"

19  (Petition, Ground 1).  Specifically, Petitioner complains counsel

20  failed to object to the allegedly improper identification procedure

21  which amounted to police "leading the witness."  See id; Exhibit A to

22  Supplemental Answer, pp. A-14 - A-16 (alleging Detective Davis was

23  "leading" witness Duran).  This complaint does not merit habeas

24  relief.

25

26      This case turned largely on the reliability of Duran's

27  identification of Petitioner as the robber.  As summarized above, the

28  prosecution introduced evidence that, a little over a month after the

17

1  robbery, Duran identified Petitioner's photograph from a 6-pack photo
2  array as that of the robber (R.T. 310-12, 319, 322-33, 335).  Duran
3  also identified Petitioner at trial as the robber and, from a
4  photograph, identified Petitioner's gun as the gun used in the robbery
5  (R.T. 303, 305-06, 310, 333, 336).  Petitioner contends that the
6  circumstances surrounding the showing of the 6-pack array and
7  photograph of the gun were improperly suggestive and that counsel was
8  ineffective for failing to object to the identification evidence as
9  allegedly tainted (Petition, Ground 1).[8]  However, Petitioner has not
10  shown that counsel's failure to object to the identification procedure
11  was unreasonable.

12

13      It is well-established that evidence derived from a suggestive
14  pretrial identification procedure may be inadmissible, if the
15  challenged procedure was so "impermissibly suggestive as to give rise
16  to a very substantial likelihood of irreparable misidentification."
17  See Simmons v. United States, 390 U.S. 377, 384 (1968); see also
18  Manson v. Brathwaite, 432 U.S. 98, 114 (1977); Neil v. Biggers, 409
19  U.S. 188, 198 (1972); People v. Cook, 40 Cal. 4th 1334, 1354-55, 58
20  Cal. Rptr. 3d 340 (Cal.), cert. denied, 128 S. Ct. 443, 169 L.Ed. 2d
21  309 (2007); People v. Cunningham, 25 Cal. 4th 926, 989-90, 108 Cal.
22  Rptr. 2d 291, 25 P.2d 519 (2001), cert. denied, 534 U.S. 1141 (2002).

23  _____

24      [8]  Petitioner appears to argue counsel should have moved
    to suppress Duran's identification of Petitioner's photograph
25  from the photo array and Petitioner's gun from the photograph, as
    well as Duran's in-court identification of Petitioner at trial,
26  as evidence assertedly derived from impermissibly suggestive
    identification procedures.  See Reply, p. 2.  The same legal
27  standards govern both in-court and photographic identifications.
    See Manson v. Brathwaite, 432 U.S. 98, 106-07 n. 9 (1977); Neil
28  v. Biggers, 409 U.S. 188, 198 (1972).

1   However, nothing about the challenged procedures was so impermissibly

2   suggestive as to render the identifications inadmissible or otherwise

3   objectionable.[9]

4

5     Assuming, _arguendo_, the police conduct prior to showing Duran the

6   photo array and photograph of the gun was suggestive, and further

7   assuming counsel was unreasonable in failing to object to the

8   identification evidence, Petitioner has not demonstrated a reasonable

9   probability that the court would have sustained any such objection,

10

11        [9]   Petitioner does not argue that the photographic array
      or the photograph of the gun were unduly suggestive in
12   themselves.  Nor does Petitioner argue that the investigating
      officer said or did anything to suggest that Duran identify a
13   particular suspect in the photo array or that Duran identify the
      gun in the photograph as the gun used by his robber.  Rather,
14   Petitioner argues that the pretrial photo identification
      procedure was unduly suggestive based on Duran's testimony at
15   trial that police told Duran Petitioner was arrested on a bicycle
      while carrying a gun and that the gun in the photograph shown to
16   Petitioner for identification was similar to the gun the
      examining police officer was carrying (Reply, p. 2).
17

18     Duran testified that, before police showed Duran the
      photograph, the officer told Duran that he was going to show
19   Duran "a gun similar to the one I have with me here" (R.T. 320).
      When asked to clarify what the officer said, Duran said the
20   officer told Duran "to keep thinking or be conscious of the fact
      that [Duran] had to remember that it was the gun, if [Duran] saw
21   it" (_Id._).  Duran also confirmed that he had been told at some
      point that Petitioner was arrested a couple weeks after the
22   robbery with a gun on a bicycle (R.T. 321-22).  However, there is
      no indication in the record whether Duran was told about
23   Petitioner's arrest _before_ being shown the photographic array for
      identification.
24

25     The investigating police officer denied having told Duran
      about Petitioner's arrest or having said anything concerning the
26   photograph of the gun prior to the identification procedure,
      other than asking if Duran could identify the gun in the
27   photograph as the one used in the robbery (R.T. 336, 338-39).

28

1  and hence has not shown <u>Strickland</u> prejudice.  As discussed more fully

2  in Section II below, evidence is admissible following a suggestive

3  identification procedure where the identification is nevertheless

4  reliable under the totality of the circumstances.  <u>See</u> <u>Manson v.</u>

5  <u>Brathwaite</u>, 432 U.S. at 111-14; <u>Neil v. Biggers</u>, 409 U.S. at 199-200;

6  <u>People v. Cunningham</u>, 25 Cal. 4th at 989.  Given the reliability of

7  the identifications in Petitioner's case, the court would have

8  overruled any objection and allowed the jury to assess the

9  persuasiveness of the identifications.  <u>See</u> <u>Manson v. Brathwaite</u>, 432

10  U.S. at 116 ("Juries are not so susceptible that they cannot measure

11  intelligently the weight of identification testimony that has some

12  questionable feature."); <u>People v. Arias</u>, 13 Cal. 4th 92, 170, 51 Cal.

13  Rptr. 2d 770, 820, 913 P.2d 980 (1996), <u>cert. denied</u>, 520 U.S. 1251

14  (1997) (same).

15

16      Because Petitioner has failed to demonstrate that counsel's

17  actions or omissions with respect to the identifications were either

18  unreasonable or prejudicial, this claim fails.  <u>See</u> <u>Strickland</u>, 466

19  U.S. at 694.

20

21  **II.   <u>Petitioner is Not Entitled to Relief on His Due Process Claim.</u>**

22

23      Petitioner contends his due process rights were violated when the

24  trial court admitted Duran's identification evidence, despite the

25  allegedly suggestive pretrial identification procedures.  <u>See</u>

26  Petition, Grounds 2 and 3.  Petitioner further contends he was denied

27  a fair trial when the police allegedly discarded the bicycle taken

28  from Petitioner at the time of Petitioner's arrest.  <u>See</u> Petition,

1 Ground 3.   Neither of these contentions merits relief.[10]

2

3    A.   **Admission of Identification Evidence Following the Allegedly**

4         **Suggestive Identification Procedures**

5

6         Due process protects against the admission of evidence derived

7 from a suggestive pretrial identification.   See Neil v. Biggers, 409

8 U.S. at 196.   Due process, however, does not require the exclusion of

9 an in-court identification where there has been an earlier suggestive

10 identification procedure, if the identification itself is sufficiently

11 reliable under the totality of the circumstances.   See Manson v.

12 Brathwaite, 432 U.S. at 111-14; United States v. Dring, 930 F.2d 687,

13 693 (9th Cir. 1991), cert. denied, 506 U.S. 836 (1992); People v.

14 Ochoa, 19 Cal. 4th 353, 412, 79 Cal. Rptr. 2d 408, 966 P.2d 442

15 (1998), cert. denied, 528 U.S. 862 (1999).   To establish that an

16 allegedly suggestive identification violated due process, Petitioner

17 must show: "(1) a pre-trial encounter is so impermissibly suggestive

18 as to give rise to a very substantial likelihood of irreparable

19 misidentification; and (2) the identification is not sufficiently

20 reliable to outweigh the corrupting effects of the suggestive

21 procedure." Van Pilon v. Reed, 799 F.2d 1332, 1338 (9th Cir. 1986)

22 (citation omitted); see also Manson v. Brathwaite, 432 U.S. at 114;

23 Neil v. Biggers, 409 U.S. at 198-201.   "The bare fact that a

24 confrontation was suggestive does not alone establish constitutional

25 ───────────────

26        [10]   Petitioner raised these claims in his handwritten brief
   filed in the California Court of Appeal as part of Petitioner's
27 direct appeal.   See Exhibit A to Supplemental Answer.   The Court
   of Appeal denied these claims in a reasoned decision.   See
28 Exhibit C to Answer.

1   error.   The confrontation must be *impermissibly or unduly* suggestive

2   under the totality of the circumstances."   <u>Johnson v. Sublett</u>, 63 F.3d

3   926, 929 (9th Cir. 1995), <u>cert. denied</u>, 516 U.S. 1017 (1995) (emphasis

4   added).   Petitioner has not met his burden.

5

6        First, as discussed above, the pretrial identification procedures

7   were not so impermissibly suggestive as to give rise to a substantial

8   likelihood of misidentification.   Second, as discussed below, Duran's

9   identification following the allegedly suggestive procedures was

10  nonetheless reliable under the totality of the circumstances.

11

12       The factors to be considered in evaluating the reliability of an

13  identification after a suggestive procedure include:

14

15       the opportunity of the witness to view the criminal at the

16       time of the crime, the witness' degree of attention, the

17       accuracy of the witness' prior description of the criminal,

18       the level of certainty demonstrated by the witness at the

19       confrontation, and the length of time between the crime and

20       the confrontation.

21

22  <u>Neil v. Biggers</u>, 409 U.S. at 199-200; <u>see also</u> <u>People v. Cook</u>, 40 Cal.

23  4th at 1354; <u>People v. Cunningham</u>, 25 Cal. 4th at 989.

24

25       As summarized above, Duran's opportunity to view the robber was

26  somewhat limited.   The entire robbery took place in approximately

27  three or four minutes (R.T. 323).   Duran was not able to see the

28  robber during the time he was told to lie face down (<u>Id.</u>).   However,

22

1   Duran spoke with the robber, looked at the robber's face, and watched

2   as the robber got close enough to put a gun to Duran's forehead (R.T.

3   304-05).   Duran admitted he was scared, but also said he would never

4   forget the face of the person who robbed him (R.T. 323-24).   Duran

5   observed his robber in medium light (R.T. 315-16).   Under similar

6   circumstances, courts have upheld identifications as reliable.   See

7   Manson v. Brathwaite, 432 U.S. at 114 (identification reliable where

8   witness stood within two feet of defendant at door for two to three

9   minutes; door opened twice and witness spoke with defendant in natural

10  daylight); Coleman v. Alabama, 399 U.S. 1, 4-6 (1970) (identification

11  from brief view on dark highway lit only by car headlights

12  sufficiently reliable); United States v. Foppe, 993 F.2d 1444, 1450-51

13  (9th Cir.), cert. denied, 510 U.S. 1017 (1993) (identification

14  reliable where, although witness saw robber only for a matter of

15  seconds, she testified she could identify perpetrator if she ever saw

16  him again); Denham v. Deeds, 954 F.2d 1501, 1504-05 (9th Cir. 1992)

17  (opportunity to view at very close proximity during course of armed

18  robbery made identification sufficiently reliable); United States v.

19  Gregory, 891 F.2d 732, 734-35 (9th Cir. 1989) (identifications

20  reliable where witnesses viewed robber at close range for

21  approximately 30 seconds); United States v. Monks, 774 F.2d 945, 956-

22  57 (9th Cir. 1985) (bank teller's identification reliable where teller

23  dealt directly with robber from a distance of two feet for three to

24  four minutes); United States v. Valenzuela, 722 F.2d 1431, 1432 (9th

25  Cir. 1983) (same); but see United States v. Field, 625 F.2d 862, 868

26  (9th Cir. 1980) (finding identification unreliable because opportunity

27  to view lasted "only a few seconds and from a distance of 20 feet").

28  ///

1    Additionally, Duran's description of the robber given to police
2  on the night of the robbery was consistent with Petitioner's
3  appearance.   Duran described his robber as a male between the ages of
4  20 to 25, approximately two inches taller than Duran, weighing between
5  180 and 190 pounds, and speaking in both English and Spanish (R.T.
6  308-09, 319).   Petitioner's father testified that Petitioner weighs
7  180 pounds, speaks both English and Spanish, and is 5'8" tall (R.T.
8  328-29).   When Duran and Petitioner both stood at trial, Duran
9  testified he was confident Petitioner was the person who robbed him
10  (R.T. 310).   The accuracy of Duran's description and his expression of
11  confidence that Petitioner was his robber suggest Duran's
12  identification was sufficiently reliable notwithstanding any
13  suggestive identification procedures.   See United States v. Duran-
14  Orozco, 192 F.3d 1277, 1282 (9th Cir. 1999) (identification
15  sufficiently reliable where witness' descriptions of defendants were
16  "fairly, although not totally" accurate); United States v. Jones, 84
17  F.3d 1206, 1210 (9th Cir.), cert. denied, 519 U.S. 973 (1996)
18  (identifications reliable where witness' descriptions were "accurate,
19  and with the exception of variations in their estimates of the
20  robber's height, their descriptions were consistent"); United States
21  v. Monks, 774 F.2d at 956 (identifications reliable where bank
22  tellers' descriptions of robber accurately described defendant's
23  proximate age, nationality and hairstyle, although there were
24  discrepancies regarding his attire); Simmons v. United States, 390
25  U.S. at 385 ("Notwithstanding cross-examination, none of the witnesses
26  displayed any doubt about their respective identifications of
27  Simmons.").
28  ///

24

1       Although Duran did not identify Petitioner as his robber until a

2 month after the robbery, and did not identify the photograph of the

3 gun until five months after the robbery, the lapse of time does not

4 render Duran's identifications unreliable.  See United States v.

5 Jarrad, 754 F.2d 1451, 1455 (9th Cir.), cert. denied, 474 U.S. at 830

6 (1985) (in-court identification reliable where three weeks elapsed

7 between crime and allegedly suggestive pretrial identification).

8 Indeed, identifications have been deemed reliable despite the lapse of

9 much longer periods of time between the crime and the identification.

10 See, e.g., Neil v. Biggers, 409 U.S. at 201 (seven months); United

11 States v. Montgomery, 150 F.3d 983, 993 (9th Cir.), cert. denied, 525

12 U.S. 917 (1998) and 525 U.S. 989 (1998) (one year); United States v.

13 Matta-Ballesteros, 71 F.3d 754, 769-70 (9th Cir. 1995), amended, 98

14 F.3d 1110 (9th Cir. 1996), cert. denied, 519 U.S. 1118 (1997) (six

15 years).

16

17       In sum, although Duran's opportunity to view his robber was

18 somewhat limited, Duran was only a few feet away from his robber,

19 spoke with him, and could see his robber clearly enough to give

20 responding police a description of the robber consistent with

21 Petitioner's appearance.  The length of time between the crime and

22 Duran's identification of Petitioner's photograph in the photo array

23 was only a month and Duran was fairly certain of his identification

24 both at trial and when shown the photo line-up.  Under these

25 circumstances, the admission of the identification evidence did not

26 deny Petitioner due process.

27 ///

28 ///

**B.  The Alleged Discarding of Petitioner's Bicycle**

To the extent Petitioner claims a due process violation based on the alleged discarding of the bicycle from Petitioner's arrest, Petitioner's claim fails as a matter of law.  The State's duty to preserve evidence is limited to "material" evidence, i.e., evidence: (1) whose exculpatory value was apparent before its destruction; and (2) is of such nature that the defendant cannot obtain comparable evidence from other sources.  California v. Trombetta, 467 U.S. 479 (1984); United States v. Sherlock, 962 F.2d 1349, 1355 (9th Cir. 1989), cert. denied, 506 U.S. 958 (1992); United States v. Dring, 930 F.2d at 693-94 (Petitioner "must at least make 'a plausible showing that the [evidence] . . . would have been material and favorable to his defense, in ways not merely cumulative to [other evidence].'" (citation omitted)).  Moreover, destruction of such evidence does not violate the constitution unless the evidence was destroyed in "bad faith."  Arizona v. Youngblood, 488 U.S. 51, 58 (1988); United States v. Estrada, 453 F.3d 1208, 1212 (9th Cir. 2006), cert. denied, 127 S. Ct. 990, 166 L. Ed. 2d 748 (2007).

Here, Petitioner has not shown the bicycle possessed an apparent exculpatory value.  In fact, the bicycle might very well have been inculpatory.  Duran testified that the bicycle the assailant was riding had chrome and the bicycle with Petitioner at the time of his arrest was chrome (R.T. 25, 303).

Assuming, arguendo, the bicycle had an apparent exculpatory value, Petitioner has failed to present any evidence suggesting that

1   the police discarded the bicycle in bad faith.[11]   "Even assuming that

2   the officers were negligent, a negligent investigation does not

3   violate [a defendant's] due process rights." <u>Villafuerte v. Stewart</u>,

4   111 F.3d 616, 625 (9th Cir. 1997), <u>cert. denied</u>, 522 U.S. 1079 (1998);

5   <u>see also</u> <u>United States v. Carreno</u>, 363 F.3d 883, 888 (9th Cir. 2004),

6   <u>vacated and remanded on other grounds</u>, 543 U.S. 1099 (2005) ("Sloppy

7   work, albeit unbecoming, is not tantamount to bad faith.").

8   Therefore, the alleged failure to preserve the bicycle did not violate

9   due process.

10  2

11      In sum, the Court of Appeal's rejection of Petitioner's due

12  process claim was not contrary to, or an objectively unreasonable

13  application of, any clearly established Federal law as determined by

14  the United States Supreme Court.   <u>See</u> 28 U.S.C. § 2254(d).   Petitioner

15  is not entitled to habeas relief on this claim.

16  ///

17  ///

18  ///

19  ///

20

21      [11]   In fact, Petitioner has presented no reliable evidence

22  that the police discarded the bicycle.  As the California Court
    of Appeal noted:

23

24      [T]he record contains nothing with respect to any
        'discarding' of the bicycle on which appellant was

25      arrested, and his claims concerning evidence tampering
        are therefore not properly before us.

26

    <u>See</u> Exhibit C to Answer (citing <u>People v. Merriam</u>, 66 Cal.2d 390,

27  396-97 (1967) (noting that appellate court, in review of trial
    court judgment on direct appeal, is limited to consideration of

28  matters contained in the trial record)); 28 U.S.C. 2254(e)(1).

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number. No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.